UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHRISTOPHER E. BROWN,

                              Plaintiff,

                                              Case # 15-CV-1044-FPG-LGF

v.

                                              DECISION AND ORDER

MCKINLEY MALL, LLC, et al.,

                              Defendant.

## INTRODUCTION

Plaintiff Christopher E. Brown brings discrimination claims against Defendant McKinley Mall, LLC,[1] alleging that architectural barriers in the mall inhibited his enjoyment of the property. Plaintiff seeks injunctive relief and attorney's fees, costs, and expenses under Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181 *et seq.*; compensatory damages under the New York State Human Rights Law (NYSHRL), N.Y. Exec. Law § 290 *et seq.*; and statutory damages under the New York Civil Rights Law (NYCRL), N.Y. Civ. Rights § 40 *et seq.*

On August 10, 2017, both Plaintiff and Defendant moved for summary judgment. ECF Nos. 48, 49. In October of 2017, Defendant moved to strike Plaintiff's response to Defendant's Motion for Summary Judgment and Plaintiff's Reply in Further Support of Plaintiff's Motion for Summary Judgment. ECF Nos. 60, 65. For the reasons stated below, Defendant's Motion for Summary Judgement is DENIED, Plaintiff's Motion for Summary Judgment is DENIED, and both of Defendant's motions to strike are DENIED.

---

[1] The parties stipulated to Defendant Macy's Retail Holdings, Inc.'s dismissal from this matter in March of 2016. ECF Nos. 11, 12.

1

## BACKGROUND[2]

Plaintiff lives in Queens, New York and has Arthrogryposis, a condition that causes atrophy in his limbs and joints and requires him to use a wheelchair. Plaintiff, an "avid sports fan and frequent traveler to sporting events across the country," first visited Buffalo in February 2015 to attend a sporting event. ECF No. 59-5 at 6. He did not visit the McKinley Mall during that trip, but "thoroughly enjoyed [his] visit to the area and made up [his] mind to return" regularly. ECF No. 59-3 at 2. In October 2015, Plaintiff returned to Buffalo to attend a New York Giants vs. Buffalo Bills football game at New Era Field, and he ate and shopped at the McKinley Mall. ECF No. 59-5 at 6. Plaintiff "constantly had to use extra caution to avoid a fall" at the mall due to architectural barriers in the parking lot and in the mall itself. ECF No. 48-1 at 5. Specifically, Plaintiff "encountered and observed disabled use parking spaces on excessive slopes throughout the mall," excessively sloped routes and walkways that lacked handrails, and exterior entrances to stores that lacked level landings. *Id.*

On December 11, 2015, Plaintiff brought the instant case against Defendant. ECF No. 1. Plaintiff returned to Buffalo in March 2016, December 2016, and February 2017 to attend Buffalo Bills games and Buffalo Sabres ice hockey games. During each visit, he visited the McKinley Mall and had to use extra caution to avoid falling.

## DISCUSSION

**I.    Legal Standard**

Summary judgment is appropriate if "the pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Sousa v. Roque*, 578 F.3d 164, 169 (2d Cir.

---

[2] The following facts are taken from each party's statement of material facts. ECF Nos. 48-1, 49-1.

2009) (quoting Fed. R. Civ. P. 56). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under governing law." *Id*. The court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. The court resolves all ambiguities and draws all factual inferences in the nonmovant's favor, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56).

To defeat summary judgment, therefore, nonmoving parties "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and they "may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted). At the summary judgment stage, a nonmoving party "must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. N.Y.C.*, 132 F.3d 145, 149 (2d Cir. 1998).

## II. Defendant's Motions to Strike

As a threshold matter, Defendant asks the Court to strike Plaintiff's Response to Defendant's Motion for Summary Judgment and Plaintiff's Reply in Further Support of his Motion for Summary Judgment for procedural reasons. While parties should take care to comply with the Local Rules and court deadlines, Plaintiff's failures in this regard were minor. Because the Second Circuit has an "oft-stated preference for resolving disputes on the merits," *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993), Defendant's motions to strike (ECF Nos. 60, 65) are DENIED.

**III.    Defendant's Motion for Summary Judgment**

Defendant argues that Plaintiff lacks standing to receive injunctive relief under the ADA. At the summary judgment stage, Plaintiff "need not establish that [he] in fact [has] standing, but only that there is a genuine question of material fact as to the standing elements." *Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160, 167 (S.D.N.Y. 2006) (citing *R.C. Bigelow, Inc. v. Unilever N.V.*, 867 F.2d 102, 103 (2d Cir. 1989)). To establish standing for the purposes of surviving summary judgment, a plaintiff must first show that there is a genuine question of material fact as to whether he suffered an "injury in fact,"[3] which the Supreme Court defines as "an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Allegations of past injury alone do not suffice to establish an injury in fact for a plaintiff seeking declaratory or injunctive relief. *See Levin v. Harleston*, 966 F.2d 85, 90 (2d Cir. 1992); *Golden v. Zwickler*, 394 U.S. 103, 109-10 (1969). Instead, that plaintiff must show a "real and immediate threat that the injury will be continued or repeated." *Farmland Dairies v. McGuire*, 789 F. Supp. 1243, 1250 (S.D.N.Y. 1992).

A plaintiff suffers injury under the ADA when he personally encounters "a barrier that deprives him of full and equal enjoyment of the facility due to his particular disability." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944 (9th Cir. 2011); *see also Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008). A plaintiff demonstrates a threat that the injury will be repeated, and therefore has standing to seek injunctive relief, if he shows "a plausible intention or desire to return to the place" of injury. *Access 4 All, Inc.*, 458 F. Supp. 2d at 168. Accordingly,

---

[3] The other elements of standing are a "causal connection between the injury and the conduct complained of so that the injury is fairly traceable to the actions of the defendant" and that "the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Defendant's Motion for Summary Judgment disputes only the injury in fact element of standing.

4

Plaintiff must demonstrate that, when he filed suit, he plausibly intended to return to the McKinley Mall. *See Small v. General Nutrition Cos.*, 388 F. Supp. 2d 83, 86 (E.D.N.Y. 2005).

Defendant argues that Plaintiff has not demonstrated a threat that his alleged injury—encountering barriers that inhibited his full and equal enjoyment of the mall—will repeat itself. According to Defendant, when he filed this suit, Plaintiff did not plausibly intend to return to McKinley Mall because he lived almost 300 miles from Buffalo and had no professional or personal ties to the region. Defendant further argues that Plaintiff is a serial litigator who has filed roughly 150 lawsuits under the ADA, including 16 cases in the Western District, and that "there is no reasonable explanation for [P]laintiff's visits to the Western New York area other than to search for ADA violations and new targets for litigation." ECF No. 63 at 7. According to Defendant, Plaintiff's litigious behavior "is an abuse to the judicial system and the Americans with Disabilities Act, and should not be tolerated by the Court." *Id.*

Many Courts have criticized serial litigators like Plaintiff and abuse of the ADA's attorney's fees provisions, which encourage plaintiffs and their lawyers to prioritize "extract[ing] large . . . cash settlement[s] from defendants" over "redressing accessibility issues for . . . disabled members of the public." *Phillips v. 180 Bklyn Livingston, LLC*, 17 Civ. 325 (BMC), 2017 WL 2178430, at *1 (E.D.N.Y. May 16, 2017). Plaintiff has settled a large number of cases, and it is unclear whether any of the entities he has sued have attempted to remedy any ADA violations. Regardless of whether Plaintiff's motives for pursuing so many ADA claims are pure or pecuniary, or some combination of both, the Court cannot deny him standing merely because his litigation tactics may be questionable. *Id.* at 3. Instead, the Court must determine whether Plaintiff had a plausible intention of returning to McKinley Mall when he filed this suit. In doing so, the Court may not assess the sincerity of Plaintiff's statement that he intended to return to McKinley Mall.

*See, e.g.*, *Disabled in Action of Metropolitan New York v. Trump Int'l Hotel & Tower*, No. 01 Civ. 5518 (MBM), 2003 WL 1751785 (S.D.N.Y. Mar. 25, 2011), at *9; *Access Now, Inc. v. South Florida Stadium Corp.,* 161 F. Supp. 2d 1357, 1364 (S.D. Fla. 2001) ("The Court cannot, however, make a credibility assessment on a summary judgment motion.").

Defendant argues that courts "have routinely held that plaintiffs such as Mr. Brown, who reside hundreds of miles away from the facility in question and routinely sue facilities under the ADA lack standing to bring such actions." ECF No. 49-15 at 14. These cases, however, are distinguishable from this case. In one of these cases, *Brother v. Tiger Partner, LLC*, 331 F. Supp. 2d 1368 (M.D. Fla. 2004), the plaintiff attempted to stay at a hotel in a town he was passing through but could not because there were no handicap-accessible rooms available. Plaintiff lived nearly 300 miles from the hotel and never tried to visit it again. *Id.* at 1371. After he sued, the plaintiff claimed he would stay at the offending hotel during an upcoming trip to Disney World, but the hotel was 50 miles from the theme park and was one of "countless other hotels" he could have chosen, many of which were located much closer to the park. *Id.* at 1372. The court found that "the facts and circumstances of this case demonstrate[d] that" the plaintiff did not plausibly intend to return to the hotel. *Id.* at 1371.

The only similarity between the plaintiff in *Brother* and Plaintiff here is that both live hundreds of miles away from the defendant property. While the distance a plaintiff lives from the defendant property can be relevant to determining if a plaintiff has shown a plausible intent to return,[4] it is not dispositive. *See, e.g.*, *Access 4 All, Inc.,* 458 F. Supp. 2d at 170 (holding that a plaintiff who lived 1,000 miles from the defendant property established standing at the summary judgment phase). Plaintiff has far more compelling reasons for returning to the McKinley Mall

---

[4] Defendant cites cases from courts outside of the Second Circuit that consider "the proximity of the plaintiff's residence to the alleged offending establishment" when determining standing. ECF No. 49-15 at 9.

than the plaintiff in *Brother* had for returning to the hotel. Plaintiff's sworn statements establish that he is an "avid sports fan" who follows "the New York Rangers hockey team, the New York Yankees baseball team, the New York Giants football team, among many others" and that he "regularly attend[s] games both at home and away." ECF No. 59-3 at 3. Plaintiff enjoyed his October 2015 trip to New Era field and wished to return for future Bills games, which he did. Furthermore, because McKinley Mall is very close to New Era Field and "contains a large selection of Plaintiff's favorite stores," the mall is a logical and convenient location for Plaintiff to eat and shop. ECF No. 48-1 at 11. It is plausible that, as a football fan who enjoyed Buffalo, Plaintiff would return to New Era Field and seek out nearby McKinley Mall for desirable shopping and dining options. *See, e.g.*, *Harty v. Simon Property Group, L.P.*, 428 Fed. Appx. 69, 72 (2d Cir. 2011) ("Harty avows a present intention to return to the Nanuet Mall, an act that depends only upon his own volition, and the likelihood of which finds some support in professional and family reasons."). Indeed, Plaintiff returned to New Era Field and McKinley Mall in subsequent visits to Buffalo.[5] ECF No. 48-2 at 2.

Defendant does not believe that Plaintiff's desire to attend sporting events and enjoy convenient shopping motivates this litigation. Instead, it argues that the Court should find that Plaintiff has no standing because Plaintiff's real reason for traveling to Western New York is to search for "ADA violations and new targets for litigation." ECF No. 63 at 8. The Court rejects this argument for two reasons. First, as explained earlier in this opinion, the Court cannot

---

[5] Plaintiff produced a photograph of him at a 2015 Buffalo Bills game and electronic receipts from Stubhub.com after the close of discovery. Defendant asks the Court to disregard this "withheld" evidence under Fed. R. Civ. P. 37(c)(1). A ruling on this request is unnecessary for purposes of this motion because the photos are cumulative of Plaintiff's sworn statements that he attended subsequent Bills games. Plaintiff's sworn statements suffice to support his standing argument. *See Lujan*, 504 U.S. at 561(stating that plaintiffs must set forth specific facts by affidavit or other evidence).

determine credibility[6] on a summary judgment motion. Second, Plaintiff admits outright that this litigation partially motivated his return visits to McKinley Mall. *See* ECF No. 49-15 at 15 ("Plaintiff additionally asserts that [he intends] to return as an ADA tester to verify whether the barriers to access he initially encountered have been remedied . . ."). Defendant argues that the Second Circuit has not accepted "ADA Tester" standing. ECF No. 63 at 7. The Second Circuit, however, has not rejected ADA Tester standing either. It is "worth noting" that the "Second Circuit in *Harty v. Simon Property Group*, 428 Fed. Appx. 69 (2d Cir. 2011), specifically included the plaintiff's self-professed status as a tester as a fact in its intent to return analysis, after the lower court had explicitly ruled that [plaintiff's] tester status did not confer standing." *Harty v. Bull's Head Realty*, No. 3:11-CV-1760 (VLB), 2013 WL 1131625, at *5 (D. Conn. Mar. 18, 2013). In any event, the issue of ADA Tester standing is not dispositive of this dispute because Plaintiff demonstrated his plausible intent to return to the mall for personal reasons, and his desire to return to the mall as both a patron and an ADA Tester are not mutually exclusive.

Additionally, Defendant argues for the first time in its reply brief that "[P]laintiff's allegations that the architectural barriers he encountered impaired his ability to safely access goods and services at the McKinley Mall are simply too conclusory to establish standing; his failure to connect the list of alleged violations to a specific injury defeats his claim of standing." ECF No. 63 at 3. According to Defendant, Plaintiff was not injured because he had "full and uninhibited access to the McKinley Mall and its stores and was not deterred from returning." *Id.* Plaintiff, however, specifically alleged that he constantly had to use extra caution to avoid falling because of the mall's excessively sloped walkways and uneven landings. Plaintiff's allegations establish,

---

[6] In any event, Plaintiff's sworn statement that he has traveled to Boston, Tampa, Dallas, Miami, San Jose, and San Francisco numerous times to attend sporting events and has not filed ADA lawsuits in any of those cities undermines Defendant's argument that Plaintiff travels around just to file new lawsuits. *See* ECF No. 59-3 at 3.

for the purposes of demonstrating standing at the summary judgment stage, that there is a genuine issue of material fact as to whether his difficulty navigating the McKinley Mall interfered with his full and equal enjoyment of the facility and thus constituted an injury under the ADA. *See Chapman v. Pier 1 Imports*, 631 F.3d 939, 947 (9th Cir. 2011) ("[T]he ADA proscribes more subtle forms of discrimination—such as difficult-to-navigate restrooms . . . that interfere with disabled individuals' full and equal enjoyment of places of public accommodation.").

Furthermore, "for standing purposes," the barriers in McKinley Mall need not "completely preclude the plaintiff from entering or from using a facility in any way" or "deter him from returning" to the mall. *Id.* at 946. It is sufficient that Plaintiff was injured and that he "intends to return to a noncompliant place of public accommodation where he will likely suffer repeated injury." *Id.* Additionally, Plaintiff has standing not only to challenge the barriers he personally encountered at the mall—he also has standing "with respect to all other barriers on the premises that affect [his] particular disability." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 188 (2d Cir. 2013). Accordingly, Defendant's Motion for Summary Judgement is DENIED.

**IV.     Plaintiff's Motion for Summary Judgement**

Plaintiff seeks summary judgment establishing that: (1) Defendant owns the subject property and is liable for noncompliance with the ADA; (2) Plaintiff is a disabled individual under the ADA; (3) Plaintiff encountered architectural barriers at Defendant's property; (4) Defendant failed to remove barriers where required under the ADA's construction standards; (5) Defendant's ADA and financial expert disclosures should be given little to no weight regarding the feasibility of the demanded ADA modifications; and (6) Plaintiff demonstrated a threat of future injury. ECF No. 48-2 at 1.

The parties do not dispute that Defendant owns the subject property, *see* ECF No. 48-2 at 7; ECF No. 58-6 at 7. Additionally, it is undisputed that Plaintiff is disabled under the ADA. *See Brown v. Showboat Atl. City Propco, LLC*, No. 08-5145(NLH), 2010 WL 5237855, at *14 (D.N.J. Dec. 16, 2010) (holding that the plaintiff, the same individual as the instant Plaintiff, was a qualified individual with a disability and that defendant did not adduce evidence contradicting plaintiff's affidavit that he was disabled and used a wheelchair).

The Court denies Plaintiff's Motion for Summary Judgment as to (3), *i.e.*, that Plaintiff encountered architectural barriers at Defendant's property. In denying Defendant's Motion for Summary Judgment, this Court credited Plaintiff's sworn testimony that he encountered barriers at the Mall, but only to the extent that Plaintiff had set forth facts "sufficient to support a jury verdict in Plaintiffs' favor on the question of standing." *Access 4 All*, *Inc.,* 458 F. Supp. 2d at 166. It does not follow, then, that there is no genuine issue of material fact that Plaintiff encountered barriers at the McKinley Mall. For example, Plaintiff avers that he observed and encountered numerous barriers, but it is unclear which barriers he encountered and which ones he observed.[7] It is within the province of the jury to assess Plaintiff's credibility on this point and others as he fleshes out his testimony during examination. The Court denies Plaintiff's Motion for Summary Judgement as to (6) for the same reason.

The Court also rejects Plaintiff's motion as to (4), *i.e.*, that Defendant failed to remove roughly 74 barriers, including excessively sloped parking spaces and ramps, where required under the ADA's construction standards. An entity's failure to remove a barrier does not automatically subject it to liability under the ADA. Whether the entity's failure constitutes discrimination

---

[7] Plaintiff flew to Buffalo on all his visits to the city, so it is not clear how he got from New Era Field to the mall. *See* ECF No. 49-15 at 11. Assuming Plaintiff did not rent a car and drive himself, it is not clear from Plaintiff's affidavit how he would have encountered excessively sloped parking spaces.

depends on whether the facility or a portion of it falls under the statute's "pre-existing buildings," "new construction," or "alteration" standard. 42 U.S.C. § 12182. Entities must remove architectural barriers from pre-existing structures, defined as structures built before 1993, when "such removal is readily achievable." *Id.* at § 12182(b)(2)(A)(iv). The statute imposes more stringent requirements on "new construction" built after January 26, 1993. *Id.* at § 12182(a). New construction must be "readily accessible to and usable by individuals with disabilities," and any barriers must be removed unless it would be "structurally impracticable." *Id.*

Finally, any alterations made after January 26, 1992 to an existing facility must "be made so as to ensure that, to the maximum extent feasible, the altered portions of the facility are readily accessible and usable by individuals with disabilities, including individuals who use wheelchairs." 28 C.F.R. § 36.402(a). Not all changes to a pre-existing facility are "alterations" under the ADA. The statute does not define the term, but the Department of Justice's implementing regulations define it as "a change to a place of public accommodation or commercial facility that affects or could affect the usability of the building or facility or any part thereof." *Id.* Modifications that "essentially preserve the status and condition of a facility, rather than rendering it materially 'new' in some sense" are not "alterations" under the ADA. *Roberts v. Royal Atlantic Corp.*, 542 F.3d 363, 370 (2d Cir. 2008). Generally speaking, as "the cost, degree, or scope of a modification decreases, the likelihood that it" constitutes an alteration under the ADA decreases. *Id.* Factors that the Second Circuit will consider when examining if a modification equals an alteration under the statute include "the scope of the modification," whether the goal of the modification "is maintenance or improvement," and whether the modification affects "only the facility's surfaces or also structural attachments and fixtures." *Id.*

11

Plaintiff asks the Court to grant summary judgment on roughly 82 barriers when there are triable issues of fact concerning which standard—existing construction or alteration—applies to many of these barriers and the cost and feasibility of barrier removal. Additionally, much of Plaintiff's Motion for Summary Judgment relies on the opinions of its expert witness. Courts "have recognized that the grant of a motion for summary judgment is often inappropriate where the evidence bearing on crucial issues of fact is in the form of expert opinion testimony" as it is within the province of the jury to "evaluate the credibility of witnesses, including experts, and weigh their testimony." *Brown v. County of Nassau*, 736 F. Supp. 2d 602, 620 (E.D.N.Y. 2010). Summary judgment may still be warranted "where the opposing party ha[s] provided no basis whatsoever for the lay factfinder to otherwise reject the qualifications, methodology, or credibility of the expert," *id.*, but here, Defendant has pointed out that Plaintiff's expert "is not an engineer, architect or contractor licensed in the State of New York" and is therefore not necessary qualified to opine on the cost of removing barriers from the mall. ECF No. 58-6 at 14.[8]

Finally, the Court denies Plaintiff's Motion as to (5), *i.e.*, that Defendant's ADA and financial expert disclosures should be given little to no weight regarding the feasibility of the demanded ADA modifications. Judges determine the threshold issue of "whether a particular witness qualifies as an expert," but it is "for the jury to decide what weight should be given to the testimony." *Hilaire v. DeWalt Indus. Tool Co.*, 54 F. Supp. 3d 223, 235 (E.D.N.Y. 2014). At trial, the adverse party may challenge any "shaky or unreliable" testimony before the jury using the "traditional devices of vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *In re Joint E. & S. Dist. Asbestos Litig. v. United States Mineral*

---

[8] Furthermore, the Court agrees that "the analysis of the alleged [ADA] violations and proposed solution" should be examined "as a whole," and that "parsing out individual claims" in a "disjointed" manner on a motion for partial summary judgment is ultimately a waste of judicial resources. ECF No. 58-6 at 11. This is particularly true given the disputes about expert testimony and the nature of previous renovations that McKinley Mall undertook.

*Prods. Co.*, 52 F.3d 1124, 1132 (2d Cir.1995) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. at 596). Because the Court cannot dictate to the jury the weight it must give Defendant's expert's testimony, Plaintiff's Motion for Summary Judgment is denied in this respect.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 49) is DENIED, Plaintiff's Motion for Summary Judgment (ECF No. 48) is DENIED, and both of Defendant's motions to strike (ECF Nos. 60, 65) are DENIED. The parties are directed to appear on Wednesday, June 6 at 4 PM to set a date for trial.

IT IS SO ORDERED.

Dated: May 17, 2018
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court